The State v. Stach.

---

No. 25,498.

THE STATE OF KANSAS, *Appellee*, v. AUGUST STACH, *Appellant*.

SYLLABUS BY THE COURT.

1. ILLEGITIMATE CHILD—*Action for Support—Evidence Supports the Verdict.* In a proceeding in bastardy to compel the father to assist in the support of his illegitimate child, the evidence examined and held to support the verdict.

2. SAME—*Motion for New Trial—Contradictory Evidence by Witness—Discretion of Trial Court.* And where, in such a proceeding, a witness testified on the hearing of a motion for new trial that part of his testimony given on the trial of the case was false, it was in the sound discretion of the trial court whether a new trial should be granted.

3. NEW TRIAL—*Newly Discovered Evidence—When Insufficient to Warrant New Trial.* Ordinarily a new trial is not allowed on the ground of newly discovered evidence when such evidence seems to be competent only for the purpose of impeaching witnesses of the opposite party, or, when it is merely cumulative.

4. ASSIGNMENT OF ERROR—*Not Well-founded.* Various assignments of error considered and held not to be well-founded.

Appeal from Jackson district court; MARTIN A. BENDER, judge. Opinion filed May 10, 1924. Affirmed.

*A. E. Crane, B. F. Messick,* and *Guy Bradford,* all of Topeka, for the appellant.

*Floyd W. Hobbs,* of Holton, *H. R. Fulton,* county attorney, *Thomas F. Doran,* and *Clayton E. Kline,* both of Topeka, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant appeals from a conviction and judgment of being the father of the bastard child of Frances Pobrislo.

The prosecuting witness, Frances Pobrislo, is a Bohemian girl about 21 years of age, living with her parents on a farm near Delia, in Jackson county. The defendant, August Stach, is also a Bohemian. These two had known each other for about four years. They attended dances and other social gatherings together. On the night of June 19, 1922, the defendant took Frances in his automobile to a party in the neighborhood. The party broke up some time after midnight. Defendant took Frances home in his automobile. The two rode in the front seat. Vincent Pobrislo, a brother of Frances, rode in the back seat. Vincent got out at the home of Frank Stach, where he was working. The defendant drove Frances to the home of her parents; he drove into the yard; the two got out of the front seat and entered the back seat of the car. Frances testified that the defendant made love to her, hugged and kissed her, pressed her and felt of her limbs, and that they had sexual intercourse on the back seat of the car.

On cross-examination she testified that she had not been keeping company with other boys; that she did not remember of having gone to St. Marys in June, 1922, with boys named Cyrus Moore and George Eakin; that she did go to Rossville with Moore and Eakin and another girl one night about the middle of May; that they were in Rossville until 9 o'clock; that Eakin was driving the car that evening to Rossville; she did not remember of the car being turned into a by-road and that she and Moore got out of the car for about half an hour, leaving Eakin and the other girl in the car; that they got out of the car at Rossville on Main street and walked a while and got back and that was the only place they left the car.

The defendant testified:

"I was with Frances Pobrislo the night of June the 19th, 1922. We were at a party at Kovar's. After the party I took her and some others to my home. I took the girl on to her home from my home that night. Just she and I were in the car. When I got to her home I stopped the car but not the engine. I did not have sexual intercourse with her that night. I was with her again on August 5, 1922, at a special dance at the Bohemian Hall. She went that night in a car with her brother and I. We stayed at the dance awhile and went home. Joe Kolbach went with us. Frances, her brother, and Joe Kolbach were with me in the car. Joe Kolbach got out at his place

and her brother got out at my place. I took Frances home that night and left my car on the road in front of her house. I had sexual intercourse with her that night. I don't think I kept company with her after that or took her any place."

On cross-examination he testified:

"Possibly I wrote this girl some letters from 1919 to 1921. I sent her a post card. I addressed her in every one of these letters as "Dearest Friend." I did not make love to this girl. I only kissed her about once. I did not pet and pat her. I did not feel of her or press her and hug her. I was with her the night of June 19, 1922, drove into her yard at her home. I did not stop my engine. I did not have sexual intercourse with her that night."

Various other witnesses testified that the defendant and Frances attended the party that night and that he took her home as stated. The defendant attempted to show that relations had existed between the prosecuting witness and one Cyrus Moore. Moore was called in rebuttal and testified:

. "I live two and one-half miles northeast of Delia. During the year 1922 I went to St. Marys with George Eakin, Edna Simmons and Frances Pobrislo. The first trip I made with them was between the 18th and 20th of May. We went to a show and left about 9:30. I never stopped the car anywhere on the road that night. Frances Pobrislo and I never left the car. We never went up any by-road. On the last day of August or the 1st of September I went to St. Marys with George Eakin, Irene Mitchell and Frances Pobrislo. Frances Pobrislo and I never left the car on that evening. We did not drive west of St. Marys. I never had sexual intercourse with Frances Pobrislo. I never received a letter from her in which she mentioned she was in the family way.

CROSS-EXAMINATION.

"I was with Frances Pobrislo once during the month of May. It was right after we finished planting corn. The second time was in July or August. We never drove up any by-road. The second time I was with her was after the St. Marys races. We never stopped along the road. I was not with her during the month of June at Delia. I got one letter from her in the fall. . . . I have never taken her any place except the two times that I have mentioned."

It is contended by the defendant that the evidence did not sustain the verdict. It is argued that, because of various contradictions made by the complaining witness, that her evidence was not worthy of belief; that she swore to a complaint charging that she became pregnant on August 15, 1922; that she wrote a letter to the defendant stating that he had "got her in a bad fix" in the latter part of July, 1922; that she did not state any other time. Attention is called to various other discrepancies in her testimony. This con-

tention is answered by the state by directing attention to testimony of Frances' brother Vincent that he attempted to determine the date for her and that she believed that conception occurred at the last act of sexual intercourse with defendant, July 29 or August 5; that she so testified at the preliminary hearing; that she was not asked by counsel for either side at the preliminary whether she had had intercourse with the defendant at any other time than July 29 or August 5, and made no reference at the preliminary as to the first act of intercourse with the defendant on June 19, 1922. It is argued that on the trial she told the whole story and gave in detail the occurrences surrounding the two acts of intercourse above set out, all of which the defendant admits except intercourse with her June 19, 1922.

She denies that she ever had sexual intercourse with any other man. The only contention of the defendant in this regard is that she went twice to St. Marys with Cyrus Moore, and some other young people, and that on these trips she and Moore got out of the car and were gone approximately half an hour. The trip to St. Marys is shown to have occurred in May, 1922. Both Frances and Moore deny that they had intercourse on this trip. In any event there was evidence that both trips were out of the range of the possible period of conception, the first trip having occurred in May, which was long prior to the possible date of conception, and the last having occurred in August, long after it was possible. The jury saw the witnesses and heard the evidence and decided that the child of Frances Pobrislo is the son of August Stach. They did this after consideration of all the disputed evidence and after an examination of the child as to the color of its hair, its eyes and the resemblance of its general features to the defendant, August Stach. The testimony of the defendant corroborates the testimony of the complaining witness and others relative to the episode of June 19, in every detail except that he denies having had sexual intercourse with her that night. This variance may be explained by the fact that the child, which is the basis of this proceeding, was born on March 20, 1923, exactly nine months from the date on which the incidents occurred. The evidence was ample to sustain the verdict.

It is contended that the court erred in overruling a motion for new trial. The principal ground in support of the motion was that the witness Cyrus Moore had testified falsely at the trial. On the motion for new trial he testified:

"I remember at the former trial that I testified that I did not get out of the car and go down the road with Frances Pobrislo that night.

"Q. You now remember that night do you not? A. The first night, yes.

"Q. Do you remember going with Eakin and Miss Simmons, Frances and yourself? A. Yes.

"Q. On the way back you got out of the car and went down the road? A. Yes.

"Q. How long were you gone? A. I should think about five minutes.

"Q. What did you do down there? A. Nothing.

"Q. Did you have sexual intercourse with her that night? A. Not that I remember of.

"Q. Did you have sexual intercourse with Frances Pobrislo at any time? A. I believe I have had.

"I went one other night with George Eakin, Irene Nichol and Frances Pobrislo. I do not remember of being out with her in the month of June, 1922. It was the night of the commencement exercises at Delia that we went to St. Marys. It was on a Sunday night. I think it was in May— I believe it was. I had sexual intercourse with her in 1920. I do not remember of having sexual intercourse with her after that. Since the last trial I have found out that some of the things I testified to were not the truth. . . . One thing was that we stopped the car and I got out with the girl and went down the road.

"Q. That was not the truth? A. We left the car.

"Q. What for? A. Don't know of any particular reason."

Moore's evidence on motion for new trial was of no probative value on the main issue as to who is the father of the child. The child was born on March 20, 1923. The evidence showed it was a normal child; that the normal period of gestation is from 273 to 280 days. Even if there had been evidence that Moore had had intercourse with the prosecuting witness in May, 1922, it would have been immaterial on the main issue, because not within the period of possible conception. Even if Frances did get out of the car and go down the road with Moore in May, 1922, it would have been immaterial for the reason that there was no claim by Moore, either at the trial or upon the hearing of the motion for new trial, that he had sexual intercourse with her on that occasion, and he stated that they were gone only about five minutes.

"The granting or refusal of a new trial is largely within the discretion of the trial court. The court sees and hears the witnesses, and has a better opportunity to know whether justice has been done than this court can have, and its ruling on such a motion has something of the standing of a finding of fact deduced from conflicting evidence and should not be disturbed except for error of law or for a manifest disregard of facts amounting to an abuse of discretion." (*State v. Lackey,* 72 Kan. 95, 99, 82 Pac. 527.)

The trial court saw and heard Moore testify on both occasions and may have been, in so far as there was a discrepancy in his testimony, convinced that Moore was testifying falsely on the latter occasion. Other testimony offered on the motion for a new trial tended only to discredit the testimony of the complaining witness as to whether or not she got out of the car and went down the road with Moore. The trial court who saw all the witnesses and heard all the testimony did not consider the showing sufficient to warrant the granting of a new trial. Under the circumstances we cannot say that error was committed. (See *The State v. Smith*, 114 Kan. 186, 217 Pac. 307; *Pittman Co. v. Hayes*, 98 Kan. 273, 157 Pac. 1193.)

We have examined various other complaints but find no error which would warrant a reversal.

The judgment is affirmed.